IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| HEMA SUDHA CHATRAGADDA | : CIVIL ACTION |
| --- | --- |
| v. | : |
|  | : NO. 15-1051 |
| DUQUESNE UNIVERSITY | : |

KEARNEY, J.                                                                                      September 14, 2017

## MEMORANDUM

Former doctoral student Hema Chatragadda sued Duquesne University alleging it retaliated against her after she reported a research assistant sexually assaulted and harassed her.[1] We held a jury trial and the jury entered a verdict in the University's favor.[2] The University moved for costs.[3] After considering Ms. Chatragadda's objections, the Clerk of Court performed his ministerial duty to tax $4,654.25 in demonstrated costs.[4] Ms. Chatragadda now moves for an order disallowing taxation of these costs due to indigence and inability to pay.[5] The University has not opposed her motion. Absent disputed facts and exercising our discretion, we grant her motion to disallow taxation of costs in this unique situation of a former graduate student with no funds and, given her immigration status, no ability to earn money under her expiring student visa to pay the costs.

### I.    Analysis

Under Federal Rule of Civil Procedure 54(d)(1), costs other than attorney's fees may be awarded to the prevailing party.[6] Upon timely motion, we may review the Clerk's decision.[7] We "may consider the non-prevailing party's indigence (or inability to pay costs) in fashioning a costs award" as a matter of equity.[8] We review the Clerk's determination of costs *de novo*,

considering previous and newly brought evidence as a whole because the Clerk's determination, while "quasi-judicial" is "essentially ministerial."[9] We may look to the evidence produced by the losing party to determine if, within our discretion, the taxation of costs may be exempted as a matter of equity.[10] Factors to determine the equitable nature of a cost award include either the prevailing party's unclean hands or bad faith tactics or the losing party's "potential indigency or inability to pay the full measure of a costs award."[11] Factors which should not be considered are the "complexity or closeness of the underlying issues," "the losing parties' good faith," or "the relative disparities in wealth between the parties."[12] We may exempt the losing party from costs but must be able to articulate our reasons for doing so.[13] The losing party bears the burden of demonstrating the inequitable nature of the costs.[14] The losing party is required to overcome the "strong presumption that costs are to be awarded to the prevailing party."[15]

### A. Ms. Chatragadda demonstrated indigence and an inability to pay costs.

Ms. Chatragadda asks we vacate the University's costs charged against her because her indigence and inability to pay.[16] We may exempt or reduce costs if we find, based on the evidence, it would be inequitable for her to pay costs due to her indigence or ability to pay. In considering the inequitable nature of taxing costs due to a party's indigence, we may look to the amount of assets she owns, her earned income, and her living situation.[17] These factors are not exhaustive and we may use our "common sense" to determine the exemption or reduction of costs.[18]

Ms. Chatragadda argues she has "no assets" and is "unemployable" due to the restrictions of her student visa.[19] She had previously been a doctoral candidate and received a stipend for her studies and graduate work.[20] The University expelled Ms. Chatragadda from the doctoral program, discontinuing her stipend.[21] She is paid significantly less than before through sporadic

2

short-term part-time employment.[22]   Ms. Chatragadda is dependent on "the generosity of others" and "[borrowed] funds from family and friends."[23] Ms. Chatragadda argues her financial situation is so dire she can only return home to India as required under her expiring visa if family and friends loan her the money for a plane ticket.[24]

The losing party may not be exempt from costs merely because she is supported by the goodwill and gifts of family and friends, but it may be a factor in the determination of inequity.[25] In *Wesley v. Dombrowski*, the court held a prisoner is not exempt from costs because the state provided him with food and basic necessities and his family and friends regularly sent money.[26] The prisoner also failed to adduce evidence he could not work while in prison and earn part-time income.[27] Unlike the prisoner in *Wesley*, Ms. Chatragadda has shown she cannot earn income outside of the University where she attended graduate school due to the conditions of her student visa.[28] She attempts to gain employment by the University, but is unable to obtain a lasting and self-sufficient paying position despite her efforts.[29] While the prisoner in *Wesley* had his basic needs paid for by the state, it is unclear Ms. Chatragadda has a fallback option outside of relying upon relatives and friends.

While evidence is necessary to determine indigence for purposes of vacating costs, we are also required to use our "common sense."[30] A variety of types of evidence is used to determine indigence. Our court of appeals cited indigence sworn in affidavits in its seminal guidance in *In re Paoli*.[31] Courts usually require at least an affidavit to show indigence.[32] Ms. Chatragadda did not proffer an affidavit or financial documents evidencing her indigence. Her attorney filed a certification of her indigence and inability to pay for a plane ticket home upon the expiration of her visa, let alone pay the taxed costs.[33] She testified previously to her lack of financial means following her inability to remain as a University student under her visa.[34] This

3

situation requires our "common sense" determination because there are "no hard and fast rules for assessing a losing party's indigency or inability to pay."[35]

We hesitate to disallow costs to the party winning a jury trial. The University incurred costs and should not be cavalierly denied reimbursement because its former student is unable to presently pay the costs. If so, a university would have a tough time with many students who lack an income source. This case presents a unique situation given Ms. Chatragadda's expiring visa and limited work options. We have no evidence of her ability to obtain funds. She is leaving the United States on borrowed money or gifts. Costs should be awarded to reimburse and not punish the civil rights plaintiff. But common sense, especially in light of Ms. Chatragadda's visa requirements, compels us to find her unable to pay her costs taxed against her in this unique time in her life. Ms. Chatragadda's dependence on the charity of others, lack of assets, and inability to earn income given her visa requirements also lead us to consider her indigent. As fair notice, nothing in this decision should be read as precedent outside of Ms. Chatragadda's showing of indigence at this time.

### B. Ms. Chatragadda's costs are vacated as a matter of equity.

Ms. Chatragadda is indigent and is unable to pay the costs taxed against her. A finding of indigence does not automatically exempt Ms. Chatragadda from costs taxed against her.[36] In *Hinterberger v. Iroquois School District*, the court reduced a costs award when a losing party claimed indigence.[37] The losing party could not show she could not pay costs.[38] Ms. Chatragadda's situation, particularly her forced exit from the United States by plane and her previous employment restrictions under her visa, is distinguishable from *Hinterberger*. It is inequitable for Ms. Chatragadda to pay costs when she cannot obtain employment to earn income and she is forced to borrow funds to return home to India when her visa expires.

4

### C. Ms. Chatragadda's objections to specific costs are denied.

Ms. Chatragadda's objections to specific costs are denied as moot.[39]

### II. Conclusion

In the accompanying Order, we exercise our discretion and, as a matter of equity, grant Ms. Chatragadda's unopposed motion to disallow the taxation of costs as inequitable due to her indigence and inability to pay them in this extraordinary fact situation.

---

[1] ECF Doc. No. 157, ¶ 1-4.

[2] ECF Doc. No. 157, ¶ 1-4.

[3] ECF Doc. No. 160, p. 1.

[4] ECF Doc. No. 163, p. 1-2.

[5] *Id.* Ms. Chatragadda also objects to specific costs and asks us to reduce her costs. Because we exempt her from costs as a matter of equity, we need not address her objections here.

[6] *See* Fed. R. Civ. P. 54(d)(1) ("[unless preempted by federal statute, another Federal Rule of Civil Procedure, or a court order], costs—other than attorney's fees—should be allowed to the prevailing party…The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.").

[7] *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 453 (3d Cir. 2000) (discussing review of Clerk's taxation of costs by district court).

[8] *In re Paoli*, 221 F.3d at 453 (emphasis omitted); *see also id.* at 463 (citing to cases in sister circuits which had held that the "losing party's indigency or inability to pay the full measure of a costs award against it" is a consideration district courts may use to review the appropriateness of costs to the losing party).

[9] *Id.* at 461; *see also id.* (citing *Farmer v. Arabian Am Oil Co.*, 379 U.S. 227, 233 (1964) (explaining *de novo* review in costs case may involve examining new evidence outside of the evidentiary record)).

[10] *In re Paoli*, 221 F.3d at 464.

[11] *Id.* at 463.

5

[12] *Id.* at 468.

[13] *Id.* at 462-63.

[14] *Id.*

[15] *Id.* at 462 (citing 10 MOORE'S FEDERAL PRACTICE, § 54.101, at 54–149).

[16] ECF Doc. No. 164, ¶ 12.

[17] *See Mazzarella v. Brady*, No. 14-5654, 2016 WL 7231894, at *3 (E.D. Pa., Dec. 14, 2016)(citing *Yudenko v. Guarinni*, No. 06-4161, 2010 WL 2490679, at *4 (E.D. Pa., June 15, 2010)).

[18] *Paoli*, 221 F.3d at 464 n. 5 ("[T]here are no hard and fast rules for assessing a losing party's indigency or inability to pay; district courts should use their common sense in making this determination.").

[19] ECF Doc. No. 164, ¶¶ 5, 9.

[20] ECF Doc. No. 1, ¶ 70.

[21] *Id.*

[22] *Id.* at ¶¶ 70-72.

[23] ECF Doc No. 164, ¶¶ 3, 10, 11.

[24] ECF Doc. No. 164 ¶ 10.

[25] *See Wesley v. Dombrowski*, No. 03-4137, 2008 WL 2609720, at *5 (E.D. Pa., June 26, 2008); *but see Sullivan v. Warminster*, No. 07-4447, 2013 WL 1934532, at *3 (E.D. Pa., May 9, 2013) (taking into account for determination of indigence plaintiff "has no income, she has no bank account, and she *survives off Government assistance and charity from her family*. Clearly, to force [plaintiff] to pay costs in this matter would be unduly burdensome both financially and emotionally.")(internal quotation marks omitted)(emphasis added).

[26] *Id.*

[27] *Id.*

[28] ECF Doc. No. 164, ¶ 5.

[29] *Compare* ECF Doc. No. 1, ¶¶ 70-71 (showing sporadic and short-term part-time employment) *and* ECF Doc. No. 164, ¶¶ 6-11 (claiming failure to obtain self-sufficient employment).

[30] *Paoli*, 221 F.3d at 464 n. 5.

[31] *Id.* at 460.

[32] *See Sullivan*, 2013 WL 1934532, at *3 (E.D. Pa., May 9, 2013); *see also Daddio v. A.I. duPont Hosp. for Children of Nemours Foundation*, No. 05–441, 2011 WL 3563671, at *5 (E.D.Pa. Aug. 12, 2011)(finding insufficient evidence for indigency merely based on allegations)("There is nothing in the record, such as financial records, affidavits, or tax returns that establish it would be inequitable to impose **costs** on the plaintiffs.").

[33] ECF Doc. No. 164, Ex. 2.

[34] ECF Doc. No. 63, pp. 23-24.

[35] *Paoli*, 221 F.3d at 464 n. 5.

[36] *Hinterberger v. Iroquois School Dist.*, No. 08-317, 2014 WL 1451456 (W.D. Pa., Apr. 14, 2014) (citing *Nw. Mut. Life Ins. Co. v. Babayan*, 253 F. App'x 205, 207 (3d Cir. 2007)).

[37] *Id.* at 3.

[38] *Id.*

[39] ECF Doc. No. 162, ¶ 5.